```
 1                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3      UNITED STATES OF AMERICA,        )  No. 14 CR 390
                                         )
 4                        Plaintiff,     )  Chicago, Illinois
                                         )  October 15, 2014
 5                                       )  9:50 o'clock a.m.
        -vs-                             )
 6                                       )
                                         )
        KEVIN JOHNSON and TYLER LANG,    )
 7                                       )
                          Defendants.    )
 8

 9                TRANSCRIPT OF PROCEEDINGS - MOTION
               BEFORE THE HONORABLE MILTON I. SHADUR
10
        APPEARANCES:
11      For the Plaintiff:       HON. ZACHARY T. FARDON
                                 United States Attorney, by
12                               MS. BETHANY K. BIESENTHAL
                                 MS. NANCY L. DePODESTA
13                               Assistant United States Attorney
                                 (219 S. Dearborn Street
14                               Chicago, Illinois 60604)

15      For Defendant Johnson:   PEOPLE'S LAW OFFICES
                                 1180 North Milwaukee Avenue
16                               Chicago, Illinois 60622
                                 BY:  MR. MICHAEL E. DEUTSCH
17                                      and
                                 LILLIAN McCARTIN ATTORNEY AT LAW
18                               2040 North Milwaukee Avenue
                                 Suite 13
19                               Chicago, Illinois 60647
                                 BY:  MS. LILLIAN M. McCARTIN
20
        For Defendant Lang:      FEDERAL DEFENDER PROGRAM
21                               55 East Monroe Street
                                 Suite 2800
22                               Chicago, Illinois 60603
                                 BY:  MR. GEOFFREY M. MEYER
23
        Court Reporter:          ROSEMARY SCARPELLI
24                               219 South Dearborn Street
                                 Room 2304A
25                               Chicago, Illinois 60604
                                 (312) 435-5815
```

1    THE CLERK:  14 CR 390, the United States versus
2  Kevin Johnson and Tyler Lang.

3    MR. DEUTSCH:  Good morning, Judge, Michael Deutsch
4  for Kevin Johnson.  And Lillian McCartin here as well for
5  Kevin Johnson.

6    MR. MEYER:  Good morning, Judge, Geoffrey Meyer on
7  behalf of Mr. Lang.

8    MS. BIESENTHAL:  Good morning, your Honor, Bethany
9  Biesenthal and Nancy DePodesta on behalf of the United
10  States.

11    MS. DePODESTA:  Good morning.

12    THE COURT:  Good morning.  Well, first of all let
13  me deal with what Terry had listed here for me, which is the
14  whole set of Lang objections.  And you will have to fill me
15  in because, as you heard, this has been criminal case day and
16  I -- although I have tried to catch up with a number of the
17  filings, I am not sure -- did the Government respond to each
18  of those motions?

19    MS. BIESENTHAL:  We did, Judge.  We filed a
20  consolidated response.  So it would just be one brief from
21  us.

22    THE COURT:  Yeah, that is what I thought.  And I am
23  not going to deal with that one now.  I am going to review
24  those.

25    The major issue that is here is the question of

1  whether Mr. Johnson is to be held in custody or not.

2  MR. DEUTSCH:  That's correct, Judge.

3  THE COURT:  And in candor I have a strong sense

4  that to urge otherwise is extraordinarily myopic.  If you

5  wanted to have living proof that someone is not a reliable

6  person in terms of permitting his strong feelings, whatever

7  they are, to drive his conduct, this would be a poster child.

8  You know, you have got a fella who really has been out of

9  control in a number of respects.  And the idea of saying,

10  well, all of the decisions about custody or not, about

11  custody or release, are basically efforts to predict human

12  conduct.

13  And about the only way that we can predict human

14  conduct, because we are -- we don't have an unclouded crystal

15  ball, is to judge by past conduct.  And I am sorry to say

16  that Mr. Johnson's past conduct gives no indication at all

17  that promises, or whatever, or good intentions on the part of

18  family members, or whatever, are adequate assurance.

19  And I am speaking now not of risk of flight but

20  danger for the community.  And I just -- you know, I read

21  everybody's submission, and I have got to tell you the -- it

22  just does not ring as credible to say that there are

23  conditions that would satisfy the concern about danger to

24  other members of the community.  He has -- I don't have to

25  elaborate.  I don't have to recount the stories.  They are

1   all recounted to me in this one.

2         So, Mr. Deutsch, now that I have told you what I

3   really think.

4         MR. DEUTSCH:  Yeah.

5         THE COURT:  Okay.

6         MR. DEUTSCH:  Judge, let me say a few preliminary

7   things.

8         THE COURT:  Yeah.

9         MR. DEUTSCH:  First of all, he has not been

10   interviewed yet by Pretrial Services to determine what his

11   state of mind is and what his support connections are at the

12   present time.  He has just completed one year in the Illinois

13   State penitentiary --

14         THE COURT:  Yes, I know that.

15         MR. DEUTSCH:  -- which is going to have a

16   significant deterrence on him.  He is not -- a lot of his

17   criminal activity -- and I agree with you there is quite a

18   bit -- began when he is 20 years old.  He is now 27 years

19   old.  I think his fervor, his political fervor, has lessened

20   extensively since then.  He is going to -- if released would

21   live with his mother who is an attorney in California.  I

22   understand --

23         THE COURT:  Yes, I saw that.

24         MR. DEUTSCH:  I understand she hasn't been able to

25   control his conduct in the past.  But he has -- and if you

1  heard from him, he is suffering as a result of his year in

2  the penitentiary.  He has some psychological problems.  I

3  think he is ready to make a different step here away from

4  some of his past history of political activity.  And I think,

5  yes, he has a history of criminal activity.

6            THE COURT:  But not just --

7            MR. DEUTSCH:  Is it seriously dangerous, Judge?

8            THE COURT:  Not just criminal activity, the thing

9  that is disturbing is the evidences of spontaneous rage and

10  and threats as a result and threats that have to be taken

11  seriously.  They certainly had to be taken seriously by the

12  targets of that.  And I -- you know, I am -- I recognize that

13  fervor sometimes carries people over the top, but the thing

14  that is bothersome in an important sense is that I don't know

15  how to get any real kind of assurances that protestations,

16  "Well, I have seen the light of day" -- you know, I am not

17  asking to abandon his beliefs.

18            But the point is that the manner in which he has

19  acted on his beliefs in the past just simply does not -- it

20  is an understatement to say that it does not inspire --

21            MR. DEUTSCH:  Judge, I can't argue with you on

22  that.  But sometimes as people get older they get a little

23  bit more mature, particularly when as here --

24            THE COURT:  The difference between 20 and 27 from

25  my perspective --

1                    MR. DEUTSCH:  Well.

2              THE COURT:  -- is but a fleeting moment, you know.

3              MR. DEUTSCH:  Yeah, I agree.  And mine as well.

4              But from a young person at 20 who just completed a

5    year in the Illinois State penitentiary at 27, I think we can

6    create some kind of conditions that will make clear to him

7    that he cannot go around yelling at people, he cannot go

8    around protesting in front of people's homes.  And if he

9    does, he is going to be violated and he is going to go in the

10   penitentiary.  We can put him on a home monitoring.  We can

11   say that he cannot be involved in violent or aggressive

12   protesting.  And I am convinced, Judge, that he will comply

13   with these conditions that you set.

14             I know it is -- his threats are disturbing, but we

15   are not talking about somebody who has a history of actually

16   physically assaulting anyone.  In all these activities they

17   are all screaming and yelling and threatening.  And I am not

18   minimizing that because someone who is threatened is going to

19   be disturbed.  But it is not somebody that we are fearful he

20   is going to go out and assault somebody or you have a gun or

21   you use a weapon against anyone.  None of that is in his

22   background.

23             And in fact there is -- he has a history of

24   complying with bond conditions and complying with probation.

25   So if we set conditions that include home monitoring,

1  prohibiting him from going to any type of aggressive

2  demonstrations, being in the house other than seeing his

3  lawyer or a doctor, I think we have him pretty well.  And he

4  is also on mandatory release from the Department of

5  Corrections for a year.  So if he does anything, they can

6  violate him.  You can revoke his bond.

7          And I think that this is not somebody that is going

8  to go out and do again what he has done.  I think it has

9  played out, Judge.  And I think he understands that.  And I

10  think this year in the penitentiary has caused him some

11  severe psychological problems.  And I don't think he wants to

12  be locked up even while he waits for trial.

13          So I am -- we are suggesting to the Court that if

14  we put him on stringent conditions and we tell him that --

15  face-to-face that he cannot be involved in any type of

16  aggressive demonstration, no kinds of threats, no going to

17  people's houses, and that he has to be home other than, you

18  know, home monitoring, I think he will be able to get some

19  kind of medical help, psychological help, while he awaits

20  trials.  So that is what I think.

21          MS. BIESENTHAL:  Judge, if I could respond just to

22  a few things.  And before I do --

23          THE COURT:  Sure.

24          MS. BIESENTHAL:  -- just for the record, obviously

25  Mr. Johnson isn't present.  Your Honor did issue a writ and

1    that -- so I am not sure why he is not here.  He should have

2    been present.

3            MR. DEUTSCH:  He is not here.

4            THE COURT:  I know I issued one.

5            MR. DEUTSCH:  Yeah.

6            MR. MEYER:  Yeah.

7            MR. DEUTSCH:  Judge, it seems to me that to have a

8    real meaningful determination here -- I know you are --

9            THE COURT:  I am not going to do anything in his

10    absence.

11            MR. DEUTSCH:  Yeah, I think he should be here.  You

12    should tell him what you think.

13            THE COURT:  He is basically under detainer, which

14    is the whole purpose of the order that I entered.  But I am

15    really --

16            THE CLERK:  Here comes someone.

17            MR. DEUTSCH:  He is being --

18            THE COURT:  Well, something is going on, but ---

19            (Discussion held off the record.)

20            THE COURT:  The record should reflect Mr. Johnson

21    has now been delivered to us at five minutes of 10:00.

22            And, Mr. Johnson, with my not knowing whether you

23    had been returned here or not, although there was an order

24    entered, we had been talking about the question about whether

25    you should or should not be kept in custody, in federal

1    custody this time, not state custody, during the pendency of

2    this case.  And Mr. Deutsch on your behalf has been arguing

3    extensively for the notion that there are appropriate

4    conditions that can be set that would assure that there would

5    be no repetition of the kind of conduct that unfortunately,

6    as I said before you arrived, you know, it is not within the

7    province of humans to be total predictors of the future and

8    the only way that we can make judgments in something like

9    this is to look at past conduct and operate on the basis that

10   the past conduct makes it likely that somebody is going to --

11   or may continue the same way.  And we can't afford to take

12   risks.

13        There are two categories of reasons for detaining

14   somebody rather than permitting the person to be released

15   while the case is going forward.  One of those is a risk of

16   flight.  And that is not suggested here, that is, nobody is

17   suggesting that you are likely to take off because you are

18   facing, as you are, criminal charges here.  I would hope that

19   is not the case, but nobody has really -- has really urged

20   that.  The Government has not.

21        The big problem is the second part of the

22   determination, and that is whether you pose a danger to other

23   persons or the community.  And you see what happens is we

24   look at what you have done in the past and try to figure out

25   do we have total assurances or strong assurances that is not

1  going to take place in the future.  And Mr. Deutsch has been

2  arguing that there are circumstances that would in turn lead

3  to that.

4  Now, one of the points you made, Mr. Deutsch, is

5  that we haven't received a report from Pretrial Services.

6  Now, that is quite true.  On the other hand, this is an

7  unusual situation because we have had a lot of input about

8  that in the form of filings up to now.  And I am not sure

9  that Pretrial Services people, who have no better crystal

10 ball than I do, are going to be in a position to do other

11 than what they typically do in a report, which is to lay out

12 whatever facts they have and then say, "These things pose a

13 risk."  And so what else is new?  We are not going to be much

14 better informed by a Pretrial Services report.

15 MR. DEUTSCH:  You are right, Judge, as to that, but

16 sometimes when a Pretrial Service person enter -- sits down

17 and interviews the person, they get a certain sense of what

18 they intend to do, where they are going to live, how they are

19 going to make a living, and what their demeanor is in terms

20 of how they intend to conduct themself if on bond.

21 But since he is here I think I would be willing to

22 have him talk to you, put him on the witness stand under

23 oath, about whether or not he feels that he can comply with

24 conditions of bond which puts him under very restrictive

25 limits in terms of even go as far as house arrest and where

1   he is going to live, and what his attitude presently is about

2   his history of criminal activity and how he views himself now

3   than he did based on his background.  So I am willing to do

4   that if the Court is willing to hear it.

5          THE COURT:  Well, just before he came in the

6   Government was about to indicate its views.  And there is no

7   reason that everybody has to be standing up while this is

8   going on.  So everybody can be seated and we will hear from

9   the prosecutors.

10          MS. BIESENTHAL:  Thank you, Judge.  I just wanted

11   to respond very briefly to a few of the things that counsel

12   argued.  We obviously have submitted a significant amount of

13   information to the Court.  And I don't want to rehash all of

14   our arguments, so I will just limit it to responding directly

15   to some of the things that counsel had said.

16          The first is I mean counsel said to your Honor

17   several different times, a number of different times, that

18   Mr. Johnson now has spent a year in the penitentiary.  But by

19   my count this is -- this is certainly not his first time that

20   he has done a year, and by my count it is the third time he

21   has done a year in jail.  And as your Honor said, I think his

22   past is the best predictor of his future behavior.  And the

23   prior two times that he spent at least close to a year in

24   jail have certainly not deterred Mr. Johnson.  And after each

25   of those stints in jail he has gone out and committed

1   criminal conduct again after serving those years in jail.

2          So I think that Mr. Deutsch's reliance on him now

3   serving a year in jail is, frankly, not relevant, your Honor,

4   given that he has done that before.  He has gone out and he

5   has committed criminal conduct again after doing that before.

6          The second thing I wanted to comment on is

7   Mr. Deutsch spent a significant amount of time talking about

8   the fact that Mr. Johnson is now older and wiser and there is

9   a big difference between a 20-year-old and a 27-year-old.

10  And I think if you -- if you look at the evidence that the

11  Government set forth about Mr. Johnson's conduct, I think

12  while it is certainly true that 2006 to 2008 when Mr. Johnson

13  was 20 years old was when he was very heavily into protesting

14  and these aggressive protests and the threats that he was

15  making when he was out at the protests -- and while that

16  seems to have tapered off some over the course of time, what

17  hasn't tapered off and what has actually escalated is the

18  other behavior.

19         So while Mr. Johnson may not be at every single

20  protest, frankly in large part because he has been

21  incarcerated here and there, but while he is not at every

22  protest, now what we are seeing as Mr. Johnson gets older is

23  this escalating dangerousness which is now he has gone from a

24  protest to having a computer that is filled with pictures of

25  explosive devices, manuals on how to make explosive devices,

1   personal information about all these people who work for

2   retail chains or furriers or different companies.

3           I mean and we are not talking -- your Honor saw it.

4   We are not just talking about these people's names.  We are

5   talking about information about their kids, what they do.  It

6   is incredibly disturbing.  And that is -- that is even worse

7   and more dangerous to me than the protests that he was doing

8   when he was 20.  That is when he is older.

9           Then we escalate even further.  Only August 2013

10  was when he was picked up for the last time after this

11  written mink threat.  At that time, you know, that -- he is

12  almost the same age that he is now.  It is just a little over

13  a year ago.  That is only over a year ago.  He has now

14  escalated his behavior even further and he has gone where he

15  is going across country and releasing mink from mink farms.

16  At the same time then he is picked up and he has got muriatic

17  acid in his car.  He has got Clorox bleach in his car.  He

18  has got these books in his car on making incendiary devices.

19          I mean this problem is escalating.  It is not

20  getting better.  It is not tapering off.  It is getting

21  worse.

22          The final thing that I wanted to point out is that

23  I think Mr. Deutsch called this just screaming and yelling

24  and that there is no indication there has ever been any

25  physical violence.  Well, first of all, that is not exactly

1   true because we set forth to your Honor -- we gave you a

2   videotape in which Mr. Johnson is seen kicking the doors, the

3   front doors of the headquarters of this company in

4   California. We submitted to your Honor evidence that he spit

5   on an employee's wife in Portland, Oregon.

6           And in addition to that I think, as your Honor

7   pointed out, the level of fear that is invoked in these

8   people who are the targets of his rage, who are the targets

9   of the screaming and the yelling, I can assure your Honor

10  that they wouldn't come before you and say that this was just

11  screaming and yelling. I can assure you that those people

12  took this seriously. They took Mr. Johnson at his word when

13  he is standing outside of their home screening that he is

14  going to burn it down, that he will be back, that the police

15  can't get there in time. I assure you they took those

16  threats seriously as they are sitting inside their homes with

17  their children.

18          So I don't think -- the Government does not view

19  this as screaming and yelling and nothing more. The

20  Government takes it very seriously. The Government is very

21  concerned about Mr. Johnson's past behavior, which is why we

22  have asked your Honor to detain him.

23          THE COURT: Mr. Deutsch.

24          MR. DEUTSCH: Yeah. Judge, as you may know, I have

25  some experience with people who are accused of being

1   dangerous and detained.  And I really distinguish -- and I am

2   not -- not in any way to minimize his conduct.  It is

3   criminal, his past conduct.  But people who are really

4   dangerous, who have used violence, guns, bombs, terrorist

5   activity, I think that is the purpose of the detention

6   dangerousness statute.

7           THE COURT:  What about people whose -- who are

8   demonstrated to have things that are preparatory to violence

9   and not just to screaming?  You know, the things that were

10  located that he has are certainly not casual reading for the

11  -- for the weekend muser who thinks about, well, I am going

12  to go out and I am going to protest on something.  That is --

13  that is scarcely an apt description of the materials and some

14  of them that I saw described here.

15          So, you know, again the best that we can do about

16  an effort to predict human conduct is to see the environment

17  in which this human conduct has manifested itself and also

18  can reasonably be said to anticipate what is going to happen.

19  The idea of his -- you know, he is not exactly reading a Tom

20  Clancy novel.  And the materials that he has -- you know, you

21  can say, "Well, you know, it is not like Walter Mitty's

22  imaginary world.  You have got somebody who has got serious

23  stuff.

24          And what is the point of having it unless it

25  mirrors somebody's intentions?  I just -- I don't get that.

1    It doesn't register with me, frankly.

2              MR. DEUTSCH:  Judge, I understand that.  Sometimes
3    some people who are fervent about their political beliefs
4    begin to read stuff that is beyond what they intend to do,
5    and it is not necessarily an indication that what is in that
6    written documents that they have in their possession they
7    intend to do.

8              THE COURT:  But the question is, should we take the
9    risk?

10             MR. DEUTSCH:  Well --

11             THE COURT:  That -- again, you know, you are not
12   functioning in terms of what I have to decide, which is, do
13   we have a serious risk here?  And I don't think that there is
14   anything other than an affirmative answer to that because you
15   know, you can say all you want, well, it is casual reading
16   which was borne of his prior beliefs and there is no --
17   nothing to indicate that he is going to act on it -- I just
18   don't have that assurance.

19             MR. DEUTSCH:  Judge, would you be willing to hear
20   from Mr. Johnson in terms of his intent and his willingness
21   to comply with any conditions that the Court may set or would
22   you feel like it wouldn't make a difference?

23             THE COURT:  You know, I am sort of in the posture
24   in that respect I don't want him to be giving up any of his
25   rights in connection with the criminal charges that are here

1  against him and I don't want him to be exposing himself in a

2  situation in which he has constitutional rights not to

3  incriminate himself.

4  　　　　MR. DEUTSCH:  I understand that.

5  　　　　THE COURT:  And so I am -- you know, and I am not

6  sure, frankly -- this is a public proceeding.  I am not sure,

7  frankly, that a -- that a motion that says, well, we are

8  going to suppress it the same way that we do, for example,

9  when there is a motion to quash assertedly illegal search or

10 seizure, in which case we can insulate the thing -- I am just

11 not sure whether that is our current situation.

12 　　　　And it is not that I don't want to hear from him.

13 It is just that I am not sure that that is going to be

14 especially enlightening because it has to depend in major

15 part on whether I find assurances to be credible.  And I am

16 not -- and I don't want to be misunderstood.  You know, I am

17 always persuadable, but I have got to tell you he has got

18 such a steep hill to climb, frankly.  And that is the reason

19 I started out the way that I did.

20 　　　　I am troubled by the notion of keeping people in

21 custody when it is not necessary.  I have -- unlike a lot of

22 my colleagues, for example, when I am taking a guilty plea

23 and it is under the statute that says that the minute the

24 person has found -- been found guilty or has pleaded guilty,

25 they are required to be incarcerated, and I don't see that

1  called for, I never accept the plea at that point.  I make a

2  finding that all of the elements have been established, but I

3  defer the acceptance of the plea to the date of sentencing.

4  I am very sensitive to that problem.  And this is no

5  exception to that.

6          But I find it awfully difficult, in light of

7  everything that has been presented to me, to think that I can

8  in good conscience create a risk for unknown people because

9  of a risk that has to be viewed as real because of what he

10 himself has created as his environment, as his conduct.  So

11 it is not just a matter of not wanting to hear from him.  It

12 is -- I really find that on all the things that have been

13 presented to me there he does -- he does represent a risk to

14 the safety of other persons, community, and that the one

15 thing I don't want to do is to -- is to be proved wrong.

16          You know, people have asked me who is the most

17 significant person in criminal justice in what used to be our

18 century, the last century.  My answer is always Willie Horton

19 because Willie Horton, of course, apart from costing Dukakis

20 any potential for the presidency, really set back criminal

21 justice in the very area that we are talking about to a

22 terrible degree because no politician now who hopes to be

23 elected to a second term wants to be thought of as soft on

24 crime.  It is a crime that that has happened.

25          MR. DEUTSCH:  Right.

1  THE COURT: But, you know, I have to call them the

2  way I see them, and I have got -- I started out by indicating

3  how compelling I found all the things that have been -- that

4  have been put forth that are adverse to him in those terms.

5  MS. VELARDE: Your Honor --

6  THE COURT: Yes?

7  MS. VELARDE: Vanessa Velarde from Pretrial

8  Services. I just wanted to advise the Court that a Pretrial

9  Services report was submitted to the Court yesterday, October

10  14th. And I can tender a copy to your courtroom deputy.

11  THE COURT: When?

12  MS. VELARDE: Yesterday October 14th in the late

13  afternoon. It was submitted to the Court. It was e-filed

14  and then sent to you via e-mail.

15  THE COURT: Well, wait just a minute. A hard copy

16  was delivered to chambers?

17  MS. VELARDE: It was not. It was sent

18  electronically, your Honor.

19  MR. DEUTSCH: But that was prior to your

20  opportunity to interview him, right?

21  MS. VELARDE: It was.

22  MR. DEUTSCH: Okay.

23  MS. VELARDE: And I can tender that to the Court

24  right now. I apologize, your Honor.

25  THE COURT: Well, now you have started me on

1 another subject. You know, our Court has adopted a dealer's

2 choice policy in terms of whether we require hard copies or

3 not. I happen to be on the paper side --

4             MS. VELARDE: Okay.

5             THE COURT: -- of that issue. And it is very

6 troubling to hear, as I constantly do, well, we put it in the

7 electronic -- in what used to be called the ether and not to

8 have it delivered to me. I read everything that comes in and

9 I read it as it comes in. And when I don't get to read it,

10 that doesn't advance the ball much. So I wish that the word

11 would get out, as I think it does for anybody who reads my

12 website, that I expect paper copies. We have LR 5.2(f) that

13 says essentially dealer's choice that judges who want hard

14 copies get them and judges who want to ruin their eyes by

15 reading on the computer can do that. And I am on the former

16 side. And I must confess that I am too old to change in that

17 respect.

18             So it -- it is nice to know that something got

19 filed, but it doesn't educate me much when I haven't seen it.

20 Anyway, but thank you for the information. And I will see if

21 it can be drawn down.

22             MS. VELARDE: I apologize.

23             THE COURT: That is all right.

24             MR. DEUTSCH: Judge, let me make this suggestion:

25 Of course the right to bail is a fundamental constitutional

1  right.

2  THE COURT:  Of course.  Of course.

3  MR. DEUTSCH:  And, you know, the

4  self-incrimination, the right to bail, those are things that

5  could be in conflict.  Let me make this suggestion:  Based on

6  what you have already said, I am not going to put the --

7  Mr. Johnson on the witness stand now.  I haven't even had a

8  chance to meet with him.

9  THE COURT:  Yeah.

10  MR. DEUTSCH:  In the future, maybe in a month, I

11  will -- maybe after meeting with him and talking to him and

12  investigating his medical situation, I may come back with a

13  motion and then --

14  THE COURT:  And I will entertain it.

15  MR. DEUTSCH:  Yeah, fine.  So why don't you just go

16  ahead and rule now and then --

17  THE COURT:  So the order is that Mr. Johnson will

18  be detained in -- he -- let me make sure of exactly what his

19  situation is on the State side.  I gather that he has been

20  discharged, or not?

21  MR. DEUTSCH:  October 22nd is his discharge date.

22  THE COURT:  All right.  So he is under a federal

23  detainer at this point --

24  MR. DEUTSCH:  Right.

25  THE COURT:  -- rather than in federal custody

1  formally?

2          MR. DEUTSCH:  Correct.

3          THE COURT:  So my ruling is that as soon as he is
4  discharged from his state responsibilities, he will be
5  detained for the reasons that I have sought to indicate
6  orally and that he will remain in federal custody.  And, by
7  the way, I should comment about that, and that is that, as
8  you know, the MCC is very much overcrowded.  And the judges
9  don't control what their allocation is because, for example,
10  for me to urge that some defendant who is before me should be
11  held at MCC, which is most convenient for everybody, means
12  that some other judge who may have an equally good call on
13  the resources is somehow precluded from for a defendant of
14  that judge.  And for that reason we basically leave it to the
15  people in the authority there rather than our trying to set
16  up a system.

17          We have tried, by the way, and it is
18  extraordinarily difficult to work out any kind of feasible
19  arrangement for priorities and so on.  I don't know then what
20  is going to happen in terms of where he is going to be
21  housed.  I would hope that certainly at least in the early
22  period that you will have access to him over at the MCC.  But
23  I don't know whether there would be a designation to one of
24  the other institutions, which means that access to him will
25  be a little more difficult and you will have to follow-up on

1   that.

2           Okay. So that -- that is my order. The order is

3   that immediately upon his being -- his being released by the

4   state authorities, the current writ which is simply for

5   purposes of a detainer will become a formal order placing him

6   in federal custody to be detained during the pendency of this

7   litigation. And as -- if, as and when you feel that you have

8   something that you think calls for a different look, I will

9   take a look.

10           MR. DEUTSCH: Very well.

11           THE COURT: Okay?

12           MR. DEUTSCH: Thank you, Judge.

13           THE COURT: Thank you all.

14           MS. VELARDE: Thank you, your Honor.

15           MS. BIESENTHAL: Judge, I think we need to set

16   another status date.

17           THE COURT: Well, what I am going to do is to first

18   of all -- I started out by saying that I am going to have to

19   deal with the motions by the co-defendant, which Mr. Johnson

20   has adopted, so it is on behalf of both.

21           MR. DEUTSCH: Correct.

22           THE COURT: And I will address myself to that. And

23   when I do that, I will have my people call you for purposes

24   of ruling on those and the establishment of a date. At this

25   point I want to make it open ended as -- if you were here in

1  court this morning, you know that Terry here inflicted on me

2  not quite my entire criminal call, not even approaching it.

3  But I -- so much for planning and leveling procedures.  Part

4  of this I suspect was caused by the fact that tomorrow we are

5  going to be holding a monthly judges' meeting out in Rockford

6  because of a memorial to Stan Roszkowski, which I wouldn't

7  miss under any circumstances, and so I think things got moved

8  over so that too much has been occupying this day over here.

9  So I -- we will get back to you promptly in terms

10  of the motions, and then we will set a next status date.

11  Meanwhile it is -- it is open-ended because 3161(h)(1)(D)

12  deals with the pendency of motions, and so that is an ongoing

13  exclusion.  Okay?

14  MR. DEUTSCH:  Okay.  Thank you, Judge.

15  THE COURT:  Thank you all.

16  MS. BIESENTHAL:  Thank you, Judge.

17  MS. DePODESTA:  Thank you.

18  (Which were all the proceedings heard.)

19  CERTIFICATE

20  I certify that the foregoing is a correct transcript

21  from the record of proceedings in the above-entitled matter.

22

23  s/Rosemary Scarpelli/          Date:  December 10, 2014

24

25