**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Case No. 14 CR 390 |
| v. ) | |
| ) | |
| ) | |
| TYLER LANG, ) | |
| KEVIN JOHNSON ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

The government filed an application to obtain historical cell site information and toll record information reflecting incoming and outgoing calls and text messages for Subject Phone 3, a phone used by Defendant Lang. Defendant Lang objects to the application. For the reasons discussed below, the Court grants the government's application.

**BACKGROUND**

Defendants Kevin Johnson and Tyler Lang were charged in a two count indictment with violating the Animal Enterprise Terrorism Act, 18 U.S.C. § 43. Count One charges both Defendants with conspiring to intentionally damage and cause the loss of real and personal property, including animals and records, in violation of 18 U.S.C. § 43(a)(2)(C). (R. 1, Indictment, at 1.) Count Two charges both Defendants with using a facility of interstate and foreign commerce for the purpose of damaging and interfering with the operations of an animal enterprise, in violation of 18 U.S.C. §§ 43(a) and 43(b)(2)(A). (R. 1, Indictment, at 3.)

I.  **The Arrest of Defendants**

The government subsequently filed an application pursuant to the Stored Communications Act, 18 U.S.C. § 2703(d), seeking an order directing the service provider to provide historical cell site information and toll record information for Subject Phone 3. The application seeks this information for the time period of May 1, 2013 through August 14, 2013.

The government submitted an affidavit from Federal Bureau of Investigation ("FBI") Special Agent Maureen Mazzola in support of the application. (R. 65 at 6.) Agent Mazzola identified the "reasonable grounds to believe that the information sought in the attached Application pursuant to 18 U.S.C. § 2703 is relevant and material to an ongoing criminal investigation [and] will lead to relevant and material information in the investigation and prosecution of Tyler LANG and Kevin JOHNSON for conspiring to vandalize and/or damage an animal enterprise…." (R. 65 at ¶ 3.)

On August 14, 2013, Mink Farm A, a farm in the business of raising and selling mink and located in Morris, Illinois, was vandalized. (*Id.* at ¶ 7.) Specifically, individuals spray painted the words "Liberation is Love" on the side of a barn, poured caustic substances over two farm vehicles, removed portions of the fence surrounding the farm for the mink to escape, and released approximately 2,000 mink from their cages. (*Id.* at ¶ 8.)

On August 15, 2013 – the next day, an officer from Woodford County performed a traffic stop on a vehicle approximately ninety miles from Mink Farm A. The vehicle did not have any license plates. (*Id.* at ¶ 9.) Two individuals were in the vehicle – Defendants Johnson and Lang. According to the Woodford County officer, both Johnson and Lang "appeared extremely nervous." (*Id.*) In response to questions from the officer, Defendants provided inconsistent accounts of where they were going and where they had been. (*Id.*)

When a second officer arrived and performed a K9 search of the vehicle, the dog alerted that the vehicle contained narcotics. (*Id.*) The officers then searched the vehicle and recovered the following: "bottles of muriatic acid, a bottle of aircraft paint remover, spray paint, bolt cutters, a scanner, two Motorola walkie-talkies, computers, Subject Phones 1 and 2, a Kodak digital camera, several books regarding tactics to avoid law enforcement and terrorism, maps, rubber gloves, ski masks, and vehicle license covers for the State of Iowa." (*Id.* at ¶ 10.) Law enforcement submitted several items from the vehicle for chemical analysis. Experts determined that some of the animal hair removed from the vehicle was mink fur. (*Id.* at ¶ 11.)

## II.     The Subject Phones

After law enforcement arrested Defendants, they seized from their vehicle two cell phones, among other items. After obtaining a court order to obtain subscriber information, toll records, and historic cell site information from Chief Judge Castillo, Verizon and Tracfone, the service providers, produced the requested information for Subject Phones 1 and 2.[1] (*Id.* at ¶ 12.) Subject Phone 1 was used by Defendant Johnson. (*Id.* at ¶ 13.)

The government obtained a search warrant to search Subject Phones 1 and 2. (*Id.* at ¶ 13.) The search of Johnson's phone in 2013 revealed that the phone number assigned to Subject Phone 3 was listed under Defendant Johnson's contact list as "Tyler Lang." (*Id.* at ¶ 15.) During the search of Subject Phone 1, the government saw a text message sent from Subject Phone 3 on June 14, 2013 to Subject Phone 1. The text said: "Give me a call, Tyler." (*Id.* at ¶ 14.) After that June 14, 2013 text message, Subject Phone 1 was in regular and consistent contact with Subject Phone 3 in the months leading up to August 14, 2013. Between June 2013 and mid-August 2013, over 800 contacts took place between Subject Phone 1 and Subject Phone 3. (*Id.*) These contacts were primarily in the form of text messages.

---

[1] Defendants are not objecting to the order for this information on Subject Phones 1 and 2.

3

The government now seeks an order for the following regarding Subject Phone 3:

1. Requiring service providers to provide records reflecting the cell tower and antenna face ("cell site") used at the start and end of each call for Subject Phone 3, for the period from May 1, 2013, through August 14, 2013.

2. Historical toll record information, including subscriber and billing information, and records reflecting incoming and outgoing calls and text messages, for Subject Phone 3, for the period from May 1, 2013, through August 14, 2013.

(R. 65, Application at 1.)

## ANALYSIS

Defendant Lang objects to the government's application for historical cell site information and historical toll record information for Subject Phone 3. Defendant contends that the government must obtain a search warrant to obtain the historical cell site information because he has a reasonable expectation of privacy in this information, thus the Fourth Amendment's warrant requirement applies. In addition, Defendant argues that the government is not entitled to either the historical cell site information or the toll record information because the government has not established that there are reasonable grounds to believe that it is relevant and material to the ongoing criminal investigation. The Court will address each argument in turn after discussing the Stored Communications Act.

### I.    Stored Communications Act

The government seeks these records under the Stored Communications Act. 18 U.S.C. § 2703(d). The Stored Communications Act provides that a court may issue an order for disclosure of historical cell site records "only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). In contrast, an application

4

for a search warrant requires the government to establish probable cause, which is a higher standard. *See In re Application of the United States Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't,* 620 F.3d 304, 313 (3d Cir. 2010) (concluding that Section 2703(d) standard was "a lesser one than probable cause.").

In *United States v. Rogers*, No. 13 CR 952, __ F.3d __, 2014 WL 5152543, at *2 (N.D. Ill. Oct. 9, 2014), Judge Kocoras recently thoroughly described historical cell site information. As Judge Kocoras explained:

> Wireless technology operates through a network of cellular towers that emit radio frequencies capable of carrying the human voice and other data. Cellular phones are able to be located in one of two ways: by cell-site tracking, or by Global Positioning System ("GPS") signal tracking. Cell-site tracking relies on a cellular phones' requirement that they be constantly connected to a mobile network. To facilitate a cellular phone's connection to a mobile network, cellular phones are programmed to be constantly searching for the nearest cellular tower to ensure connection to the strongest signal. Once the phone selects the strongest signal, it transmits the user's identifying data so that the subscriber's network confirms the cell phone's location to route any incoming calls. This constant search and submission of information occurs every few seconds. If the signal to a tower changes, or if a mobile phone moves, the mobile phone may switch its signal to a new tower. *See* Timothy Stapleton, Note, *The Elec. Commc'ns Privacy Act and Cell Location Data,* 73 Brook.L.Rev. 383, 387 (2007).

*Id.* Here, the government seeks the historical cell site records to obtain the location of Subject Phone 3 during the period of May 1, 2013 through August 14, 2013.

II.  **The Government Does Not Need a Search Warrant to Obtain Historical Cell Site Information**

Defendant does not contest that the Stored Communications Act permits the seizure of historical cell site information. Instead, Defendant contends that it violates the Fourth Amendment by doing so because a search warrant is mandated to obtain such records. Specifically, Defendant argues that because obtaining the historical cell site information from the third party service providers amounts to a search under the Fourth Amendment, the government must first obtain a warrant to acquire this information. The Court disagrees.

5

### A. Fourth Amendment

Under the Fourth Amendment of the United States Constitution, "a search conducted without a warrant issued upon probable cause is '*per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions.'" *United States v. Borostowski*, No. 13-3811, __ F.3d __, 2014 WL 7399074, at *11 (7th Cir. Dec. 31, 2014) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). "A 'search' within the meaning of the Fourth Amendment occurs only where an individual has a reasonable expectation of privacy in the area searched." *United States v. Kelly*, 772 F.3d 1072, 1083-84 (7th Cir. 2014) (citing *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). Thus, if Defendant Lang has a reasonable expectation of privacy in his historical cell site records, obtaining such records will constitute a search as defined by the Fourth Amendment and the government must obtain a search warrant to acquire them.

Although the Seventh Circuit has not explicitly addressed the issue of whether historical cell site information raises Fourth Amendment issues thus requiring a search warrant, it recently noted that it has "not found any federal appellate decision accepting [the] premise that obtaining cell-site data from telecommunications companies—under any factual scenario—raises a concern under the Fourth Amendment." *United States v. Thousand,* 558 Fed.Appx. 666, 670 (7th Cir. 2014). Indeed, the majority of courts[2] that have addressed a Fourth Amendment challenge to obtaining cell site information have analyzed the request under the third party/business records framework as articulated by the Supreme Court in *United States v. Miller*, 425 U.S. 435, 443, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) and *Smith v. Maryland*, 442 U.S. 735,

---

[2] In *United States v. Davis*, 754 F.3d 1205, 1216 (11th Cir. 2014), the Eleventh Circuit held that "cell site location information is within the subscriber's reasonable expectation of privacy" and thus the "obtaining of that data without a warrant is a Fourth Amendment violation." The Eleventh Circuit, however, subsequently granted the government's petition for an *en banc* rehearing and vacated this opinion. *United States v. Davis*, 573 Fed.Appx. 925 (11th Cir. 2014).

744, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). *See In re U.S. for Historical Cell Site Data,* 724 F.3d 600, 612-15 (5th Cir. 2013); *United States v. Giddins,* No. WDQ-14-0116, ___ F.Supp.3d ___, 2014 WL 4955472, at *8 (D.Md. 2014); *United States v. Banks*, ___ F.3d ___, 2014 WL 4594197, at *3-4 (D. Kan. Sept. 15, 2014); *United States v. Graham,* 846 F.Supp.2d 384, 389-390 (D.Md. 2012).

In *Miller*, the Supreme Court held that a defendant had no expectation of privacy in his bank records possessed by the financial institution because "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Miller*, 425 U.S. at 443. Subsequently, in *Smith*, the Supreme Court addressed whether the warrantless installation and use of a pen register that recorded the numbers dialed from Smith's phone violated the Fourth Amendment. *Smith*, 442 U.S. at 736. The Court held that it did not because Smith had no reasonable expectation of privacy in the numbers dialed because he turned them over to a third party, namely the phone company. "When he used his phone, petitioner voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business. In so doing, petitioner assumed the risk that the company would reveal to police the numbers he dialed." *Smith*, 442 U.S. at 744.

Similar to *Miller* and *Smith*, Defendant Lang has no expectation of privacy in his historical cell site records because he voluntarily conveyed this information to his service provider. As the Fifth Circuit said in *In re U.S. for Historical Cell Site Data*:

> [C]ell site information is clearly a business record. The cell service provider collects and stores historical cell site data for its own business purposes, perhaps to monitor or optimize service on its network or to accurately bill its customers for the segments of its network that they use. The Government does not require service providers to record this

7

> information or store it. The providers control what they record and how long these records are retained. The Government has neither required nor persuaded providers to keep historical cell site records. In the case of such historical cell site information, the Government merely comes in after the fact and asks a provider to turn over records the provider has already created.
>
> Moreover, these are the providers' own records of transactions to which it is a party. The caller is not conveying location information to anyone other than his service provider. He is sending information so that the provider can perform the service for which he pays to connect his call. And the historical cell site information reveals his location information for addressing purposes, not the contents of his calls. The provider uses this data to properly route his call, while the person he is calling does not receive this information.

*In re U.S. for Historical Cell Site Data,* 724 F.3d at 611-12 (internal quotation omitted).

The Court agrees with this reasoning and follows the numerous courts that have held that an individual does not have a legitimate expectation of privacy in historical cell site information and thus the protections of the Fourth Amendment do not attach to it. *See United States v. Guerrero*, 768 F.3d 351, 360-61 (5th Cir. 2014) (noting that historical cell site data is not governed by the Fourth Amendment); *Rogers*, ___ F.3d ___, 2014 WL 5152543, at *4 ("Historic electronic location records fit squarely into the type of records the Supreme Court contemplated in *Smith*."). *See also United States v. Shah*, No. 5:13-CR-328, 2015 WL 72118, at *7 (E.D.N.C. Jan. 6, 2015) (finding that historical cell site information "is not protected by the Fourth Amendment"); *United States v. Giddins,* ___ F.Supp.3d ___, 2014 WL 4955472, at *10 (D.Md. Sept. 30, 2014) (the defendant's "Fourth Amendment rights were not violated when the government obtained his cell site location data pursuant to a court order under 2703(d)"); *United States v. Banks*, No. 13-CR-40060-DDC, ___ F.Supp.3d ___, 2014 WL 4594197, at *4 (D. Kan. Sept. 15, 2014) ("Because the defendants voluntarily conveyed CSLI to service providers as part of a business transaction, the statutory standard in 2703(d) governs and Fourth Amendment protections do not apply to their [cell site data]"). Cf. *In re Application of U.S. for an Order*

8

*Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't,* 620 F.3d 304, 317 (3d Cir. 2010) (reversing magistrate judge's denial of an order under Section 2703(d) yet noting that "[a] cell phone customer has not 'voluntarily' shared his location information with a cellular provider in any meaningful way" and that "it is unlikely that cell phone customers are aware that their cell phone providers collect and store historical location information").

### B.     *Jones* Does Not Apply to the Facts Here

*United States v. Jones*, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), does not provide otherwise.  In *Jones,* the Supreme Court held that attaching a GPS tracking device to a vehicle and subsequently monitoring the movement of the vehicle constituted a search under the Fourth Amendment.  The Supreme Court found that the government had "physically occupied private property for the purpose of obtaining information" when it "trespassorily inserted the information-gathering device" onto the vehicle.  *Id.* at 950, 952.  *Jones* did not rely upon the *Smith* third party doctrine, "let alone purport to desert or limit it."  *United States v. Wheelock*, 772 F.3d 825, 829 (8th Cir. 2014).  Instead, it relied on the government's trespass into the vehicle where the defendant had an expectation of privacy.  While one concurring opinion noted that "it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties" because of the "digital age," the concurrence did not abrogate the third party doctrine.  *Jones*, 132 S.Ct. at 957 (Sotomayor, J., concurring).  *See also Guerrero*, 768 F.3d at 360 (noting that Justice Sotomayor has expressed some skepticism, but *Smith* remains the law).

### III.    The Government Has Established Reasonable Grounds To Believe that the Records are Relevant and Material to an Ongoing Criminal Investigation

Defendant Lang does not argue that the Fourth Amendment protects the toll records sought by the government.  Instead, Lang contends that the government has failed to establish

9

reasonable grounds to believe that the historical toll records from Subject Phone 3 are relevant and material to its ongoing criminal investigation. Lang also argues that the government has failed to establish "reasonable grounds" with respect to the cell site information. The Court finds, however, that the government has established reasonable grounds to believe that both the historical cell site information and toll records from Subject Phone 3 are relevant and material to the ongoing criminal investigation. Specifically, the historical cell site and toll records for Subject Phone 3 are relevant and material because the evidence establishes that Defendant Lang used Subject Phone 3 during the time period leading up to the charged incident at Mink Farm A. Lang was in constant contact through Subject Phone 3 with Defendant Johnson on Subject Phone 1 during this time period, and Defendants Lang and Johnson were charged together as co-conspirators in the criminal activity against Mink Farm A. The sought-after records will identify other individuals with whom Lang was in contact and will show Defendant Lang's whereabouts during this time period, including locations he may have visited to purchase the items used to carry out the raid.

The Grand Jury found probable cause to believe that Defendant Lang conspired with Defendant Johnson "and others known and unknown to the Grand Jury" to vandalize an animal enterprise, namely Mink Farm A. (R. 1, Indictment). The Grand Jury further found probable cause to believe that the conspiracy began no later than on or about August 5, 2013 and continuing until at least August 15, 2013. (*Id.*)

The government has set forth more than sufficient evidence to establish that Defendant Lang used Subject Phone 3. Agent Mazzola explained in her Affidavit in Support of the Application that a search of Defendant Johnson's phone revealed that the phone number assigned to Subject Phone 3 in Johnson's contacts was listed as "Tyler Lang." (R. 65 at ¶15.)

10

Furthermore, Subject Phone 3 sent a text message to Defendant Johnson's phone that an individual named "Tyler" signed. (R. 65 at ¶14.) These specific and articulable facts meet the government's burden of linking Lang to Subject Phone 3. The subscriber and billing information for Subject Phone 3 is relevant and material in that it may corroborate Lang's use of Subject Phone 3.

In addition, the evidence establishes that Subject Phone 3 was active in the time period leading up to the incident at Mink Farm A. Based on the toll records and cell site history for Subject Phones 1 and 2, the government has established that from June 2013 through the time period leading up to the raid of Mink Farm A, Subject Phone 1, which Johnson used, had approximately 800 contacts with Subject Phone 3. Defendant argues that the toll records from Subject Phone 1 already provide the government with the number of contacts between the phones. The government, however, is entitled to corroborate this information with the toll records of Subject Phone 3. The frequency and duration of contacts between Defendants is relevant and material to their relationship and planning. The requested toll records will also demonstrate contacts that Subject Phone 3 (used by Lang) had with others who may have been involved.

Further, the historical cell site information from Subject Phone 3 will also help the government determine Defendant Lang's whereabouts leading up to the raid of Mink Farm A. The physical location of Subject Phone 3 is unknown. If Defendant Lang brought the phone with him from California to Illinois, it will track his route. The cell site information will show the areas where Defendant Lang frequented in the time period leading up to the raid and the location of where he may have purchased items, including those found in the vehicle on August 15, 2013: muriatic acid, aircraft paint remover, spray paint, bolt cutters, a scanner, two Motorola

11

walkie-talkies, computers, a Kodak digital camera, several books regarding tactics to avoid law enforcement and terrorism, maps, rubber gloves, ski masks, and vehicle license covers. (R. 65, Mazzola Aff. ¶ 10.)

The cell site information will also disclose if he left the phone in California. Defendant argues that the government cannot have it both ways – it cannot rely on two mutually exclusive scenarios to demonstrate reasonable grounds. This is precisely, however, why the government seeks the records. The government has met its burden of establishing their relevance and materiality to the ongoing investigation.

Moreover, the fact that the law enforcement officers did not recover Subject Phone 3 during the search of the vehicle is not dispositive. Indeed, during the search of the vehicle, law enforcement recovered pamphlets advocating for the release of animals from fur farms, including the "Complete Guide to Liberating Fur Farm Prisoners" which included a section on "How to Raid a Fur Farm – Animal Liberation in Eight Steps." (R. 94, Ex. A.) The pamphlet contained a "Security Primer" setting forth ways to avoid detection. Regarding "cell phone tracking," the document provided:

> Every cell phone is a tracking device. Turning a phone off is not sufficient, and time will tell whether removing the battery is in fact 100% effective. *The safest practice is to leave cell phones at home.*
>
> Police agencies also have the ability to turn any cell phone into a microphone remotely, and monitor all conversations within earshot – even when the phone is turned off. Cell phones are a major liability in any clandestine activity and should be kept far away from the planning and execution of an action.

(*Id.* at 28) (emphasis added.) The government has met its burden.

## CONCLUSION

For the reasons set forth above, the Court grants the government's application.

DATED: January 23, 2015                    ENTERED

                                           _____
                                           AMY J. ST. EVE
                                           U.S. District Court Judge

Case: 1:14-cr-00390 Document #: 101 Filed: 01/23/15 Page 13 of 13 PageID #:526