**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 14-CR-390 |
| ) | |
| KEVIN JOHNSON, TYLER LANG ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendants Kevin Johnson and Tyler Lang ("Defendants") jointly move to dismiss the criminal indictment against them. For the reasons set forth below, the Court denies Defendants' motion.

**BACKGROUND**

An indictment charged Defendants under the Animal Enterprise Terrorism Act ("AETA") with damaging an animal enterprise, in violation of 18 U.S.C. § 43(a)(2)(A), and conspiring to damage an animal enterprise, in violation of 18 U.S.C. § 43(a)(2)(C). (R. 1, Indictment.) Specifically, the indictment alleges that Defendants caused significant damage to the property of a mink farm. (R. 1.)

The section of the AETA defining its offense conduct states as follows:

(a) Offense. Whoever travels in interstate or foreign commerce, or uses or causes to be used the mail or any facility of interstate commerce –

> (1) for the purpose of damaging or interfering with the operations of an animal enterprise; and
>
> (2) in connection with such a purpose –

>(A) intentionally damages or causes the loss of any real or personal property (including animals or records) used by an animal enterprise, or any real or personal property of a person or entity having a connection to, relationship with, or transactions with an animal enterprise;
>
>(B) intentionally places a person in reasonable fear of the death of, or serious bodily injury to that person, a member of the immediate family…of that person, or a spouse or intimate partner of that person by a course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation; or
>
>(C) conspires or attempts to do so.
>
>Shall be punished as provided for in subsection (b).

18 U.S.C. § 43(a). The indictment charges Defendants with violating §§ 43(a)(2)(A) and 43(a)(2)(C), but not § 43(a)(2)(B). (R. 1.)

The AETA defines "animal enterprise" as:

>(A) a commercial or academic enterprise that uses or sells animals or animal products for profit, food or fiber production, agriculture, education, research, or testing;
>
>(B) a zoo, aquarium, animal shelter, pet store, breeder, furrier, circus, or rodeo, or other lawful competitive animal event; or
>
>(C) any fair or similar event intended to advance agricultural arts and sciences.

18 U.S.C. § 43(d)(1). The AETA does not define "real or personal property."

Penalties under the AETA are based, in part, on the amount of "economic damage" that results from the offense. "Economic damage":

>(A) means the replacement costs of lost or damaged property or records, the costs of repeating an interrupted or invalidated experiment, the loss of profits, or increased costs, including losses and increased costs resulting from threats, acts or vandalism, property damage, trespass, harassment, or intimidation taken against a person or entity on account of that person's or entity's connection to, relationship with, or transactions with the animal enterprise; but
>
>(B) does not include any lawful economic disruption (including a lawful boycott) that results from lawful public, governmental, or business reaction to the disclosure of information about an animal enterprise.

18 U.S.C. § 43(d)(3). Finally, the AETA also contains several "Rules of Construction," including the following:

> Nothing in this section shall be construed—
>
> (1) to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution.
>
> (2) to create new remedies for interference with activities protected by the free speech or free exercise clauses of the First Amendment to the Constitution, regardless of the point of view expressed, or to limit any existing legal remedies for such interference…

18 U.S.C. §§ 43(e)(1)-(2).

Defendants move to dismiss the indictment against them, arguing that the AETA: 1) is facially overbroad because it criminalizes protected speech that causes an "animal enterprise" to lose profits or business goodwill; 2) is void for vagueness because its terms allow for and result in arbitrary and discriminatory enforcement against animal rights activists; and 3) violates substantive due process because it punishes as an act of "terrorism" non-violent damage to private property. The Court held oral argument on February 19, 2015 to provide the parties an opportunity to further elucidate their positions.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "When considering a motion to dismiss, a court assumes all facts in the indictment are true and 'must view all facts in the light most favorable to the government.'" *United States v. Fenzl*, 731 F.Supp.2d 796, 799 (N.D. Ill. 2010) (quoting *United States v. Yashar,* 166 F.3d 873, 880 (7th Cir. 1999)). "To successfully challenge the sufficiency of an indictment, a defendant must demonstrate that the indictment did not satisfy one or more of

3

the required elements and that he suffered prejudice from the alleged deficiency." *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013). "[A]n indictment must state each element of the crimes charged, provide the defendant with adequate notice of the nature of the charges so that the accused may prepare a defense, and allow the defendant to raise the judgment as a bar to future prosecutions for the same offense." *United States v. Nayak*, 769 F.3d 978, 979-80 (7th Cir. 2014). An indictment also may be dismissed "if subject to a defense that raises a purely legal question." *United States v. Boender*, 691 F.Supp.2d 833, 837 (N.D. Ill. 2010) (citing *United States v. Labs of Virginia, Inc.,* 272 F.Supp.2d 764, 768 (N.D. Ill. 2003)). "The Fifth Amendment guarantees the right to an indictment by grand jury and serves as a bar to double jeopardy, while the Sixth Amendment guarantees that a defendant be informed of the charges against him." *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002). In this regard, "[t]he test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Vaughn*, 722 F.3d at 925 (quoting *United States v. Hausmann*, 345 F.3d 952, 955 (7th Cir. 2003)).

## ANALYSIS

### I. Overbreadth Challenge

Defendants first argue that the AETA is facially overbroad because it criminalizes protected speech that causes an "animal enterprise" to lose profits or goodwill. This argument is directed at 18 U.S.C. § 43(a)(2)(A), which criminalizes actions that "intentionally damage[] or cause[] the loss of any real or personal property (including animals or records) used by an animal enterprise…," but does not define "real or personal property." Defendants argue that the phrase "intentionally damage[] or cause[] the loss of any real or personal property" includes lost profits and other purely economic damage. Defendants therefore contend that the AETA is facially

overbroad because it criminalizes speech, otherwise protected by the First Amendment, which intentionally causes an animal enterprise to lose profits, but does not damage any of its physical property.

Defendants' challenge to the AETA is facial, rather than as-applied to their charged conduct. "[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *City of Chicago v. Morales*, 527 U.S. 41, 52, 199 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 612–615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)); *see also Bell v. Keating*, 697 F.3d 445, 455-56 (7th Cir. 2012) (A facial challenge "is inappropriately employed unless the statute 'substantially' criminalizes or suppresses otherwise protected speech vis-à-vis its 'plainly legitimate sweep.'") (quoting *United States v. Williams*, 553 U.S. 285, 292-93, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008)).

"[T]he first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Stevens*, 559 U.S. 460, 474, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (quoting *United States v. Williams*, 553 U.S. at 293, 128 S.Ct. 1830). "To prevail in such a facial challenge, a plaintiff must cross a high bar. A statute is facially overbroad only when 'it prohibits a substantial amount of protected speech.'" *Ctr. for Ind'l Freedom v. Madigan*, 697 F.3d 464, 470-71 (7th Cir. 2012) (quoting *Williams,* 553 U.S. at 292, 128 S.Ct. 1830). The Supreme Court has recognized that "[b]ecause of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment," the "overbreadth doctrine is 'strong medicine'" that courts should employ "'only

5

as a last resort.'" *New York v. Ferber*, 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (quoting *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908); *see also Williams*, 553 U.S. at 293, 128 S.Ct. 1830. A court should "construe the statute to avoid constitutional problems, if the statute is subject to such a limiting construction." *Ferber*, 458 U.S. at 769 n.24, 102 S.Ct. 3348.

### A. The Plain Language of the Statute Excludes Economic Damage

The government and Defendants each make arguments as to whether the Court should interpret "real or personal property…used by an animal enterprise" to include (or exclude) purely economic damages or lost profits. *See* 18 U.S.C. § 43(a)(2)(A). The government argues that the statute is directed exclusively at tangible property, not intangible profits, and that the "economic damage" definition in the penalties provision of the statute indicates that Congress intended to exclude purely economic damages from being considered "real or personal property." In reply, Defendants argue that the statute is not directed exclusively at tangible property, and that the "economic damage" definition in the penalties provision of the statute does not indicate that Congress intended to exclude economic damages from the definition of "real or personal property."

In construing the statute, the Court largely agrees with the government. Reading the offense conduct and penalties provisions in conjunction, the AETA implements a two-step process. In step one, the government must first prove (in addition to the other elements) that the defendant intentionally damaged or caused the loss of any real or personal property. In step two, the AETA imposes penalties on the defendant based in part on the amount of "economic damage," which is defined to include "loss of profits," that results from the offense—the greater the lost profits, or other economic damages, the greater the penalties. As the government argues, the specific inclusion of the defined term "economic damage" in the penalties provision of the

statute, but not in the offense conduct, indicates that Congress did not intend to criminalize conduct that solely causes economic loss as damage to property. *See Andrews v. Chevy Chase Bank*, 545 F.3d 570, 575 (7th Cir. 2008) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *Bates v. United States*, 522 U.S. 23, 29-30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997)). The Court agrees that if Congress intended to criminalize purely economic damages as damage to property, it would have included that defined term in the offense conduct.

The government's interpretation of the AETA is further supported by the term "used" in the offense conduct provision. *See* 18 U.S.C. § 43(a)(2)(A) ("[R]eal or personal property" must be "used" by an animal enterprise.) Defendants argue that businesses use "money," and thus the Court should interpret "the loss of any real or personal property…used by an animal enterprise" to include lost profits. This interpretation asks too much of the plain language of the statute. As the government noted at oral argument, "money" is very different from intangible lost profits. A more natural reading is that the offense conduct requires damage to property used by an animal enterprise, which cannot include purely economic damages, and then once property damage is shown, the penalties provision takes into account a wider range of effects of the defendant's conduct, including lost profits to the animal enterprise, in imposing a penalty.

In addition, the penalties provision explicitly excludes from "economic damage" "any lawful economic disruption (including a lawful boycott) that results from lawful public, governmental, or business reaction to the disclosure of information about an animal enterprise." 18 U.S.C. § 43(d)(3)(B). It would not make sense for the statute to criminalize the intentional disclosure of information regarding an animal enterprise that intends to cause economic damage

7

(but not other property damage), and then carve an exception out of the penalties provision for losses caused by that same conduct.

### B.     Rules of Construction

The AETA's Rules of Construction and legislative history also support the government's reading. As part of their overbreadth challenge, Defendants argue that the AETA would implicate a substantial amount of protected speech if it defined damage to property to include economic damages. Both the AETA's Rules of Construction and legislative history, however, unambiguously indicate that Congress did not intend for the AETA to infringe upon protected First Amendment speech. The AETA's "Rules of Construction" state that "[n]othing in this section shall be construed…to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution." 18 U.S.C. § 43(e)(1). In interpreting this provision, the First Circuit recently held in a pre-enforcement civil challenge to the AETA that it "preclude[s] an interpretation according to which protected speech activity resulting in lost profits gives rise to liability." *Blum v. Holder*, 744 F.3d 790, 801 (1st Cir. 2014).[1]

The legislative history of the AETA also strongly indicates that Congress did not intend for it to infringe upon First Amendment-protected expression. It contains, for example, the following statements of Congressional intent: "It goes without saying that first amendment freedoms of expression cannot be defeated by statute. However, to reassure anyone concerned with the intent of this legislation, we have added in the bill assurances that it is not intended as a restraint on freedoms of expression such as lawful boycotting, picketing or otherwise engaging in

---

[1] In *Blum*, several animal rights activists brought a pre-enforcement civil challenge to the AETA on constitutional grounds based on their fear of prosecution. The First Circuit held based on its reading of the statute that the activists lacked standing because their fear of prosecution was speculative. *Blum*, 744 F.3d at 803. Although the procedural posture of *Blum* was different, the Court agrees with the First Circuit's application of the Rules of Construction to the property damage provision in 18 U.S.C. § 43(a)(2)(A).

lawful advocacy for animals." 152 Cong. Rec. H8590-01, 2006 WL 3289966 (statement of Rep. Scott). "I fully recognize that peaceful picketing and public demonstrations against animal testing should be recognized as part of our valuable and sacred right to free expression. For this reason, all conduct protected by the First Amendment is expressly excluded from the scope of this legislation. This law effectively protects the actions of the law-abiding protestor while carefully distinguishing the criminal activity of extremists." 152 Cong. Rec. S9254-01, 2006 WL 2582709 (statement of Sen. Feinstein).

Thus, both the Rules of Construction and the legislative history indicate that Congress explicitly did not intend for the AETA to criminalize protected First Amendment speech. In contrast, Defendants' argument shows the extent to which, under their reading, the statute would infringe upon First Amendment rights. Defendants cite as an example the recent documentary *Blackfish*, which sharply criticized SeaWorld for its treatment of killer whales, and which Defendants claim caused SeaWorld to lose $925 million in market capitalization. Defendants contend that the making of Blackfish meets all of the elements of an AETA violation, notably because it intended to cause SeaWorld, an animal enterprise, to lose profits. In light of the Rules of Construction and the legislative history, it is evident that Congress expressly did not intend for the AETA to criminalize such clearly protected First Amendment expression.

Defendants also argue that the Court should not interpret the AETA in light of its Rules of Construction because a "savings clause" cannot "operate to save an otherwise invalid statute." *See CISPES v. F.B.I.*, 770 F.2d 468, 474 (5th Cir. 1985). That principle is not applicable under the circumstances here. As Defendants agreed at oral argument, if a statute is "legitimately open to more than one interpretation," one of which is constitutional and the other is not, a savings clause can indicate that the constitutional interpretation is correct. (2/19/2015 Tr.) For example,

*CISPES v. F.B.I.*, cited by Defendants, stated the following in upholding a different statute against a First Amendment overbreadth challenge based in part on a similar "savings clause":

> Of course, such a provision cannot substantively operate to save an otherwise invalid statute, since it is a mere restatement of well-settled constitutional restrictions on the construction of statutory enactments. However, it is a valuable indication of Congress' concern for the preservation of First Amendment rights in the specific context of the statute in question. Thus, it serves to validate a construction of the statute which avoids its application to protected expression.

*CISPES v. F.B.I.*, 770 F.2d at 474. As discussed above, the Court agrees with the government that the AETA excludes purely economic damages from "the loss of any real or personal property" under § 43(a)(2)(A). The Rules of Construction, as well as the AETA's legislative history, serve to validate this interpretation of the statute, which limits it from applying to a significant amount of protected First Amendment expression.

As a final matter on overbreadth, Defendants propose additional hypotheticals that they contend render the AETA overbroad. Even if Defendants could posit a situation in which the statute raised First Amendment concerns, "[t]he 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *Williams*, 553 U.S. at 303, 128 S.Ct. 1830. The AETA is directed at property damage, threats, and violence toward animal enterprises—any stray impermissible applications of the law are not substantial "when judged in relation to the statute's plainly legitimate sweep." *City of Chicago v. Morales*, 527 U.S. at 52, 199 S.Ct. 1849 (quotation omitted).

For these reasons, the Court denies Defendants' overbreadth challenge.

**II.     Void for Vagueness**

Defendants next argue that the AETA is facially void for vagueness because "animal enterprise" is broadly defined to include any "commercial or academic enterprise that uses or sells animals or animal products for profit…" 18 U.S.C. § 43(d)(1)(a). Because the statute

10

criminalizes acts that "intentionally damage[] or cause[] the loss of any real or personal property (including animals or records) used by an animal enterprise," Defendants argue that the statute makes every act of theft, libel, or vandalism against any food or retail store in the country a federal crime, as long as there is an interstate component. This broad provision provides law enforcement, according to Defendants, with "maximum discretion," and invites arbitrary and discriminatory enforcement of the AETA.

"A vagueness claim alleges that, as written, the law either fails to provide definite notice to individuals regarding what behavior is criminalized or invites arbitrary and discriminatory enforcement—or both." *Bell v. Keating*, 697 F.3d at 455. Here, Defendants allege only the second type of vagueness claim, that the AETA invites arbitrary and discriminatory enforcement. Such a claim must show that the statute "impermissibly delegates to law enforcement the authority to arrest and prosecute on 'an ad hoc and subjective basis.'" *Id*. at 462 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). A statute is not void for vagueness, however, "simply because it requires law enforcement to exercise some degree of judgment." *Bell*, 697 F.3d at 462. "To the contrary, due process rejects 'sweeping standard[s] [that] place[ ] unfettered discretion in the hands of police, judges, and juries to carry out arbitrary and erratic arrests and convictions.'" *Id*. at 462-63 (quoting *Wright v. New Jersey,* 469 U.S. 1146, 1151, 105 S.Ct. 890, 83 L.Ed.2d 906 (1985)). To put it differently, a statute must not "set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 165, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

As an initial matter, at oral argument the government asserted that Defendants only have standing to bring an as-applied challenge (rather than a facial challenge) to the AETA on

11

vagueness grounds because Defendants are not alleging that the AETA's potential for arbitrary and discriminatory enforcement impacts their First Amendment rights. *See United States v. Stephenson*, 557 F.3d 449, 456 (7th Cir. 2009) ("Unless a vagueness challenge threatens a First Amendment interest, a court must examine the challenge on an 'as-applied' basis—that is, whether the statute is unconstitutionally vague in light of the facts of the case at hand.") In response, Defendants argue that courts allow a defendant to bring a facial vagueness challenge against a statute that is also vague as applied to him. (*See* 2/19/2015 Tr.) As Defendants contend that their facial and as-applied arguments are essentially the same, the Court proceeds to address the merits of their argument. (*See* 2/19/2015 Tr.) (Defendants' counsel stating that "…at the end of the day, it doesn't make that much of a difference because [Defendants'] vagueness argument is the same in either regard. It's that the statute invites arbitrary and discriminatory enforcement. And if that's the case, then there's no reason why that also wouldn't follow with respect to this individual prosecution.")

The Court agrees with the government that the AETA's broad definition of animal enterprise does not support a vagueness challenge based on its potential for arbitrary and discriminatory enforcement. The cases upon which Defendants rely all address statutes that define criminal conduct much more vaguely than the definition of criminal conduct at issue here. In *Papachristou*, for example, the Supreme Court invalidated a statute that read as follows:

> Rogues and vagabonds, or dissolute persons who go about begging, common gamblers, persons who use juggling or unlawful games or plays, common drunkards, common night walkers, thieves, pilferers or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served, persons able to work but habitually living upon the earnings of their wives or minor children shall be deemed vagrants and, upon conviction in the Municipal Court shall be punished…

*Papachristou v. City of Jacksonville*, 405 U.S. at 157 n.1, 92 S.Ct. 839. The Supreme Court found this law unconstitutional in part because it criminalized such a broad range of conduct that it necessarily would lead to arbitrary and discriminatory enforcement by the police. *See id.* at 162, 92 S.Ct. 839 ("[t]his ordinance is void for vagueness, both in the sense that it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, and because it encourages arbitrary and erratic arrests and convictions.") (quotation omitted). The Court held that because the law contained "no standards governing the exercise of the discretion [it] granted," it "furnish[ed] a convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure," such as "poor people, nonconformists, dissenters, [and] idlers." *Id.* at 170, 92 S.Ct. 839 (quotation omitted). Likewise, in *Bell v. Keating*, the Seventh Circuit recently struck down portions of a Chicago disorderly conduct ordinance because of its susceptibility to discriminatory and arbitrary enforcement. *Bell*, 697 F.3d at 463. The ordinance at issue in *Bell* criminalized an individual's behavior when he "knowingly…fails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm." *Id.* at 450. The court held that that provision as applied to acts of disorderly conduct that "are likely to cause…serious inconvenience, annoyance, or alarm" gave too much discretion to police. *Id.* at 463.

Here, the AETA much more clearly defines the conduct it criminalizes. In order to violate the section of the AETA challenged by Defendants, an individual must, among other requirements, "intentionally damage[] or cause the loss of any real or personal property (including animals or records) used by an animal enterprise." 18 U.S.C. § 43(a)(2)(A). Unlike

13

the other statutes cited by Defendants, this provision narrowly targets acts that intentionally cause property damage or loss. Further, the AETA imposes the additional *mens rea* requirement that an individual act "for the purpose of damaging or interfering with the operations of an animal enterprise." 18 U.S.C. § 43(a)(1). The AETA's proscribed conduct is simply not the type of "sweeping standard" that gives unfettered discretion to law enforcement. In other words, law enforcement does not have discretion to determine whether a vague term amounts to criminal conduct. The underlying criminal activity is clearly proscribed. Although Defendants argue that the AETA criminalizes conduct taken against a large number of entities because the definition of "animal enterprise" is broad, the fact that the AETA criminalizes clearly defined conduct against a wide range of potential victims does not lead to "arbitrary and erratic arrests and convictions." *Bell*, 697 F.3d at 462-63.

In addition, Defendants' argument that the AETA will result in arbitrary and discriminatory enforcement because it "over-federalizes" conduct, such as vandalism, that is already criminalized at the state or local level is not persuasive. Defendants, in fact, conceded at oral argument that they do not have any supporting authority for the argument that a statute can be void for vagueness based on this theory. (2/19/2015 Tr.)[2] Indeed, the Seventh Circuit has held that "without some showing that either the statute[] in question or the prosecution of this case contravene some specific rule of constitutional or statutory law, the mere fact that the conduct in question is of a sort traditionally dealt with through state law cannot serve as a basis

---

[2] Defendants only cite to a recent order in *Johnson v. United States*, 135 S.Ct. 939 (2015) that requests briefing on "[w]hether the residual clause in the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(B)(ii), is unconstitutionally vague." The issue there though is whether the language in a federal criminal statute that increases the maximum sentence for defendants with past convictions (including state convictions) involving "conduct that presents a serious risk of physical injury to another" is void for vagueness. *See Sykes v. United States*, 131 S.Ct. 2267, 2287, 180 L.Ed.2d 60 (2011) (Scalia, J., dissenting). The dispute is over the clarity of the statute, not whether a federal statute can criminalize conduct that has traditionally been prohibited only at the state level. Further, the Supreme Court has not yet issued a ruling on the merits of the case.

for dismissing the indictment." *United States v. Hausmann*, 345 F.3d 952, 959 (7th Cir. 2003) (quotation omitted). Defendants do not persuade the Court that it can or should depart from that principle here.

Finally, the Court does not agree with Defendants that the AETA targets animal rights activists for arbitrary and discriminatory enforcement. As discussed above, the AETA strikes a balance between protecting the First Amendment rights of activists and punishing the criminal conduct of extremists who target animal enterprises. *See* 152 Cong. Rec. S9254-01, 2006 WL 2582709 (statement of Sen. Feinstein) ("This law effectively protects the actions of the law-abiding protestor while carefully distinguishing the criminal activity of extremists"); 152 Cong. Rec. H8590-01, 2006 WL 3289966 (statement of Rep. Scott) ("While we must protect those engaged in animal enterprises, we must also protect the right of those engaged in first amendment freedoms of expression regarding such enterprises.") That is not a basis for a vagueness challenge. For these reasons, the Court denies Defendants' motion to dismiss on the grounds that the AETA is void for vagueness.

## III. Substantive Due Process

Defendants finally argue that the AETA violates substantive due process, both facially and as-applied to Defendants' conduct, because it punishes as an act of "terrorism" non-violent property damage. This argument is based solely on the inclusion of the term "terrorism" in the title of the "Animal Enterprise Terrorism Act," and the AETA's stated purpose "[t]o provide the Department of Justice the necessary authority to apprehend, prosecute, and convict individuals committing animal enterprise terror." Animal Enterprise Terrorism Act, S. 3880, Pub. L. 109-374, 109th Cong. (2006).[3] Defendants concede that the right not to be "labeled" by a conviction

---

[3] While the title of the law as enacted is the "Animal Enterprise Terrorism Act," the statute is actually codified as "Force, violence, and threats involving animal enterprises." *See* 18 U.S.C. § 43.

15

under a statute with a title that does not apply to one's conduct is not a "fundamental" right, but argue that it is nonetheless a "non-fundamental" right. Defendants then assert that the AETA cannot survive the rational basis review applicable to non-fundamental rights.

For non-fundamental rights, "there is a residual substantive limit on government action which prohibits arbitrary deprivations of liberty by government." *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 576 (7th Cir. 2014). "Where a non-fundamental liberty—sometimes described as a 'harmless liberty'—is at stake, the government need only demonstrate that the intrusion upon that liberty is rationally related to a legitimate government interest." *Id*. (citation omitted). "It is irrelevant whether the reasons given actually motivated the legislature; rather, the question is whether some rational basis exists upon which the legislature could have based the challenged law." *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013) (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). "Those attacking a statute on rational basis grounds have the burden to negate 'every conceivable basis which might support it.'" *Id*.

As an initial matter, Defendants contend that the AETA deprives individuals of the right not to have a misleading label attached to one's serious crime. In support, Defendants cite a number of cases in the sex offender registration context that they contend are analogous. In *People v. Knox*, for example, the Court of Appeals of New York addressed a challenge to a New York state requirement that any person convicted of kidnapping an individual under the age of seventeen, who is not that person's child, register as a sex offender under New York's Sex Offender Registration Act. *People v. Knox*, 903 N.E.2d 1149 (N.Y. 2009). Although the court in *Knox* denied the defendants' challenge to the registration requirement on rational basis grounds, it agreed that the defendants had "a constitutionally-protected liberty interest,

16

applicable in a substantive due process context, in not being required to register under an incorrect label." *Id*. at 1152. The AETA, however, does not impose a similar registration requirement. Further, it is not clear that the AETA "labels" Defendants as terrorists. The text of the AETA contains no reference to "terrorism," the government need not prove that Defendants committed a crime of "terror" to convict them, and an AETA conviction would not make Defendants eligible for the terrorism sentencing enhancement. *See* U.S.S.G. § 3A1.4 (referencing definition contained in 18 U.S.C. § 2332b(g)(5)).

Defendants also argue, however, that an AETA conviction could lead to the Bureau of Prisons placing them in restrictive prison units because their conviction is terrorism-related. At oral argument, the government conceded that based solely on the title of the AETA, as part of the Bureau of Prisons' process for determining a defendant's designation, a defendant convicted under the AETA will automatically have his case "seen by a counter terrorism unit employee." (2/19/2015 Tr.) The Court need not decide, however, whether the title of the AETA on its own infringes upon any rights of Defendants. Instead, assuming without deciding that Defendants properly articulate a non-fundamental right that the AETA infringes, the Court finds that the AETA's title and purpose pass rational basis review.

First, the Court disagrees with Defendants that there was not a rational basis for including the terms "terror" and "terrorism" in the purpose and title of the AETA, respectively. In making their argument that the statute is not "rationally related" to terrorism, Defendants assert that although there is not one universally accepted definition of "terrorism," "there is 'a consensus' that violence is a universal component." (R. 63, Def.'s Mot, at 22.) The Oxford English Dictionary defines "terrorism" as "[t]he unofficial or unauthorized use of violence and intimidation in the pursuit of political aims." *Oxford English Dictionary* (online ed.). It is clear

that Congress was driven by these types of conceptions of terrorism in passing the AETA. Indeed, the legislative history of the AETA is replete with examples showing that the passage of the AETA was motivated by preventing violence and intimidation against animal enterprises and associated individuals:

> "In recent years, some animal rights activist groups have employed violence and intimidation against enterprises that use or sell animals or animal products…"

152 Cong. Rec. H8590-01, 2006 WL 3289966 (statement of Rep. Sensenbrenner).

> "Victims have experienced threatening letters, e-mails and phone calls, repeated organized protests at their homes and the blanketing of their neighborhoods with defamatory literature. Some of the more violent acts by these groups include arson, pouring acid on cars, mailing razor blades, and defacing victims' homes."

*Id*.
> "Scientists around [Wisconsin] have received, in the mail or at their home, razor blades with letters stating that they were laced with the AIDS virus. Personal information such as home addresses, phone numbers, and photographs of researchers have been posted on extremist Web sites. Many of these same scientists report death threats and home visits by animal rights extremists…"

*Id*. (statement of Rep. Petri).

> "We have found that [certain individuals] are complaining that they are now being stalked, harassed, intimidated or threatened, with some individuals even being physically assaulted, and had their homes, businesses or cars vandalized. Since the Animal Enterprise Terrorism law was enacted in 1992, there have been some 1,100 complaints of such incidents, with property losses reported of being more than $120 million."

*Id*. (statement of Rep. Scott).

Accordingly, the title and purpose of the statute easily pass rational basis review.

Defendants' argument that the text of the AETA is not rationally related to its title or purpose is also not persuasive. As discussed above, the AETA criminalizes conduct taken for the "purpose of damaging or interfering with the operations of an animal enterprise," that either "intentionally damages or causes the loss of any real or personal property…used by an animal enterprise," or "intentionally places a person in reasonable fear of…death…or serious bodily

injury… by a course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation." 18 U.S.C. § 43(a)(2). Although the offense encompasses a broader swath of conduct than Defendants' asserted definition of "terrorism," including certain non-violent damage to property, there is no doubt that it also criminalizes the "use of violence and intimidation" (i.e., terror) against animal enterprises that the legislative history indicates Congress passed the statute to address. Defendants do not show that the text of the statute casts such a wide net that it bears no rational relationship to that legitimate purpose. *See Goodpaster*, 736 F.3d at 1071 ("[t]he law must merely bear a rational relationship to some legitimate end.") (quotation omitted).

Accordingly, the Court denies Defendants' motion to dismiss the indictment on the basis that it violates Defendants' substantive due process rights.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss the indictment.

**DATED: March 5, 2015**　　　　　　　　　　　　**ENTERED**

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　AMY J. ST. EVE
　　　　　　　　　　　　　　　　　　　　　　　　U.S. District Court Judge