UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 14 CR 390 |
| v. | |
| TYLER LANG | Judge Amy J. St. Eve |

FILED
JUL 22 2015
7-22-15
JUDGE AMY ST. EVE
United States District Court

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant TYLER LANG, and his attorney, GEOFFREY MEYER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A) and Rule 11(a)(2), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with conspiring to travel in interstate commerce with the purpose of damaging an animal enterprise, in violation of Title 18, United States Code, Section 43(a)(2)(C), and traveling in interstate commerce for the purpose of damaging an animal enterprise, in violation of Title 18, United States Code, Sections 43(a) and 43(b)(2)(A).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with conspiring to travel in interstate commerce with the purpose of damaging an animal enterprise, in violation of Title 18, United States Code, Section 43(a)(2)(C).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning no later than on or about August 5, 2013, and continuing until on or about August 15, 2013, in the Northern District of Illinois, and elsewhere, Tyler LANG and his co-defendant, Kevin Johnson, conspired with each other, and with others known and unknown, to travel in interstate commerce, and to use and cause to be used a facility of interstate and foreign commerce, for the purpose of damaging and interfering with the operations of an animal enterprise, including Mink Farm A and Fox Farm A, and in connection with that purpose, intentionally damaged and caused the loss of real and personal property (including animals and records) used by an animal enterprise, and real and personal property of a person having a connection to and relationship with an animal enterprise, which offense resulted in economic damage exceeding $10,000, in violation of Title 18, United States Code, Sections 43(a) and 43(b)(2)(A), all in violation of Title 18, United States Code, Section 43(a)(2)(C).

More specifically, Mink Farm A is located in Morris, Illinois, and is in the business of raising and selling minks to furriers. On August 13, 2013, LANG and Johnson vandalized Mink Farm A. Specifically, LANG and Johnson spray painted the words "Liberation is Love" on the side of a barn located on Mink Farm A and poured caustic substances over two farm vehicles, causing significant damage to the barn and those vehicles. LANG and Johnson also released approximately 2,000 minks from their cages. LANG and Johnson had removed portions of the fence surrounding the mink farm in order to facilitate the release of the minks. They also removed and destroyed the breeding cards from the minks' cages, which identified their breed and are required for the subsequent sale of the minks to a furrier. Of the 2,000 released minks, approximately 600 died or were never recovered. The remaining minks lost their resale value because the breeding cards were removed and destroyed.

In the weeks leading up to the attack on Mink Farm A, LANG and Johnson drove together from California to Illinois, traveling with the purpose of damaging Mink Farm A and other animal enterprises. Along the way, LANG and Johnson stopped in various states, including Wisconsin, where they purchased materials with which to commit the vandalism, such as aircraft paint remover.

On August 15, 2013, LANG and Johnson were stopped by local police officers in Woodford County, Illinois. The stop occurred approximately ninety miles from Mink Farm A and only approximately eight miles from Fox Farm A. At the time

they were stopped, LANG and Johnson were headed in the direction of Fox Farm A, a farm in the business of breeding and then selling fox to furriers.

LANG and Johnson were driving to Fox Farm A in order to damage it. To facilitate the vandalism of Fox Farm A, LANG and Johnson had equipment in their car, including bottles of muriatic acid, a bottle of aircraft paint remover, spray paint, bolt cutters, a scanner, two Motorola walkie-talkies, computers, several books regarding tactics to avoid law enforcement and terrorism, maps, rubber gloves, ski masks, and vehicle license covers for the State of Iowa.

As a result of the vandalism LANG and Johnson committed at Mink Farm A, the mink farmers lost between $120,000 and $200,000, which includes the physical damage to the property, the replacement cost for the minks, and the lost profits from the farm's inability to sell the minks at their fair value.

### Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

   a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

   b. **Offense Level Calculations**.

      i. The base offense level is 6, pursuant to Guideline § 2B1.1(a)(2).

      ii. Because the resulting loss amount is more than $120,000, but less than $200,000, the base offense level is increased by 10, pursuant to Guideline § 2B1.1(b)(1)(F).

      iii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of

5

Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    iv.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

  c.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 3 and defendant's criminal history category is II:

    i.  On or about August 17, 2011, defendant was convicted of misdemeanor theft in the Long Beach Superior Court and sentenced to 3 years' probation. Defendant's term of probation began on August 17, 2011, and ended on August 16, 2014. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this conviction.

    ii.  On or about November 6, 2013, defendant was convicted of possession of burglary tools in the Circuit Court of the Eleventh Judicial Circuit,

Woodford County, Illinois, and sentenced to 30 months' conditional discharge. Pursuant to Guideline § 4A1.2(a), because this conviction is part of the instant offense, defendant receives zero criminal history points for this conviction.

      iii.    Because defendant committed the instant offense while on a term of probation, pursuant to Guideline § 4A1.1(d), defendant receives two additional criminal history points.

    d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 13, which, when combined with the anticipated criminal history category of II, results in an anticipated advisory sentencing guidelines range of 15 to 21 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

    e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and

defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, defendant acknowledges that the total amount of restitution owed to Mink Farm A is approximately $200,000, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code,

Section 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

14. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to defendant.

### Acknowledgments and Waivers Regarding Plea of Guilty

#### Nature of Agreement

18. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14 CR 390.

19. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Conditional Plea of Guilty

20. The government agrees that defendant's plea of guilty is entered pursuant to Fed. R. Crim. P. 11(a)(2). Pursuant to that Rule, the parties agree that defendant, with the consent of the Court, may enter a conditional plea of guilty, reserving his right to appeal the Court's Order of March 5, 2015, denying defendant's motion to dismiss. Only in the event of a reversal of that decision will defendant be permitted to withdraw his plea. The government does not consent to an appeal on any other pretrial issue, and defendant reserves the right to appeal only the identified pretrial ruling and any issues relating to sentencing. Defendant acknowledges that in the event of a reversal of the Court's order denying the motion to dismiss, the government may reinstate and prosecute any charges against defendant, including but not limited to the charges to which he is pleading guilty under this Agreement. Defendant understands that the Court decides whether or not to approve the entry of this conditional plea under Fed. R. Crim. P. 11(a)(2). If

the Court refuses to accept the conditional term of this Agreement, this Agreement shall be null and void.

## Waiver of Rights

21. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment

separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    b.  **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty, the Court's Order of March 5, 2015, referenced above, and the sentence imposed. Defendant understands

that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

22.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

23.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

24.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for

obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

26. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

28. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

29. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

30. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

31. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

32. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: July 22, 2015

_____
ZACHARY T. FARDON
United States Attorney

_____
BETHANY K. BIESENTHAL
Assistant U.S. Attorney

_____
TYLER LANG
Defendant

_____
GEOFFREY MEYER
Attorney for Defendant